# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 21-23917-CV-ALTONAGA/TORRES

MARTA GONZALEZ CASTILLO,

       *Plaintiff,*

v.

KILOLO KIJAKAZI, Acting Commissioner of
the Social Security Administration,

       *Defendant.*

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross motions for summary judgment filed by Marta Gonzalez Castillo ("Plaintiff"), [D.E. 26], and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), [D.E. 31]. Even under the limited standard of review that governs this case, the Court finds that substantial evidence does not support the ALJ's determination, which warrants a remand for further proceedings before the ALJ.[1] For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 26] should be **GRANTED**, Defendant's motion for summary judgment [D.E. 31] should be **DENIED**, and the decision of the Administrative Law Judge ("ALJ") should be **REMANDED**.

---

[1]    The Honorable Cecilia M. Altonaga referred all dispositive matters in this case to the undersigned Magistrate Judge for a Report and Recommendation. [D.E. 2].

### I.      FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2019, Plaintiff applied for disability insurance benefits, alleging a disability onset date of June 27, 2017. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels.  Plaintiff then requested a hearing before an ALJ, which took place on January 20, 2021.  After considering the record and the testimony of a vocational expert ("VE"), ALJ Tracey Leibowitz issued an unfavorable decision on March 5, 2021.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2019.  The ALJ found at step two that Plaintiff had several severe impairments including spine disorders, osteoarthrosis, depressive disorders, and schizoaffective disorders.  The ALJ then determined at step three that her severe impairment did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform:

> [S]edentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can had occasional exposure to hazards. She can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, within the scope of Reasoning Level 2. She could respond to demands and adapt to changes in a work setting. In addition, the claimant could work at an appropriate and consistent pace. She can occasionally interact with supervisors, coworkers, and the general public.

[D.E. 21 at 31].  The ALJ then proceeded to step four and determined that Plaintiff was not able to perform her past relevant work as a housekeeper.   At step five,

however, the ALJ determined that, in light of Plaintiff's age, education, work experience, and RFC, she could perform jobs that exist in significant numbers in the national economy.  Accordingly, the ALJ held that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 15, 2019.

On March 5, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision.  Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).  Accordingly, this action is now ripe for disposition.

## II.  STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew."  *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).  Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence

may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.  ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment,

the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC prior to this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work (i.e., sedentary, light, medium, heavy, and very heavy).

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

6

On appeal, Plaintiff argues that the ALJ's decision must be remanded because (1) the ALJ committed reversible error by relying on a Cooperative Disability Investigations ("CDI") report to rebut medical findings by an acceptable medical source, (2) the ALJ's RFC assessment was not supported by substantial evidence, and (3) the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Plaintiff can perform.  For the reasons discussed below, this Court finds Plaintiff's first argument persuasive and therefore recommends that the case be remanded on this basis.

### A. *The ALJ's Dispositive Reliance on the Investigative Report*

On October 22, 2019, Vicky Quamina-Lee, an investigator in the Cooperative Disability Investigations Unit, obtained surveillance video from the Family Dollar Store near Plaintiff's home.  Quamina-Lee obtained this video because she had been tasked with investigating an allegation that Plaintiff exaggerated the severity of her functional limitations.[2]  The video depicts a 19-minute interval on October 5, 2019, and Quamina-Lee's summary of the video reflects the bulk of her CDI report that the ALJ admitted into evidence as Exhibit B9F at Plaintiff's hearing over the objections of Plaintiff's counsel.

---

[2]     In fact, Section III of the CDI report states that the investigation was referred to Quamina-Lee because a third party named *Shagonda Santiago* was suspected of exaggerating the severity of *her* functional limitations.  The cause of this error eludes the Court because Quamina-Lee was not subject to cross-examination at Plaintiff's hearing.  While it is likely, in the Court's view, that this CDI report was innocently modeled off an old report regarding Ms. Santiago and the inclusion of her name was therefore an inadvertent oversight by Quamina-Lee, the true cause of this apparent template error remains a mystery.  Nevertheless, the error does call into question the accuracy of the information contained in the balance of this CDI report.

At the beginning of the video, Plaintiff approaches the entrance to the Family Dollar Store without the assistance of a cane, walker, wheelchair, or friend.  At this time, according to Quamina-Lee, Plaintiff walked with a steady gait.  Once inside the store, however, Plaintiff grabbed a grocery basket and was observably limping as she headed toward the grocery aisle – an area of the store that, according to Quamina-Lee, was not subject to the scrutiny of the store's security cameras.

Approximately 14 minutes later, Plaintiff returns into view when she enters the queue at the checkout register.  Plaintiff is then observed negotiating three transactions with a store employee.  She paid for one transaction in cash and paid for the other two transactions with an EBT card that required her to input a four-digit PIN, which she apparently recalled from memory.  Notably, while negotiating the cash transaction, Plaintiff accidentally dropped coins from her purse and was able to bend over to pick up the coins before handing them to the store employee.

After the transactions were complete, Plaintiff picked up her grocery bags and limped toward the exit.  And at this point, according to Quamina-Lee, the store video ends.

When Quamina-Lee acquired the video from the Family Dollar Store, she also interviewed one of the store's managers who, beyond her sex and job title, is not identified in the CDI report.  Quamina-Lee reportedly showed this manager a photograph of Plaintiff, and the manager reportedly stated that Plaintiff is a regular customer of the store, that she recognized Plaintiff because of her limp, that Plaintiff

usually shops alone and without the assistance of a cane or walker, and that Plaintiff does not have a problem shopping or using the point-of-sale machine.

But the CDI report touches on more than just a narrative regarding the surveillance video and the interview of the unidentified store manager. What would be a factual report of what the investigator observed transforms itself into a source of speculative medical opinion. For instance, the CDI report acknowledges that both the manager and the investigator could observe Plaintiff ambulating with a limp, but then adds that she did not show any "discomfort" or "pain" while walking inside or outside of the store. Apparently, in the opinion of Quamina-Lee, limping is not a logical indication that the person with the limp is in pain. Yet, a limp is generally a physical manifestation of pain and discomfort. Indeed, pain and discomfort could very well be the *cause* of the limp. How many times have we seen an athlete limp off the field of play after suffering a leg injury? Concluding from afar that a limp is unaccompanied by pain or discomfort is tantamount to an accusation of malingering given the Plaintiff's testimony that she suffers from a great deal of pain. But it is worth noting that here Quamina-Lee rendered such an opinion without any articulated basis in fact or medical source other than her confirmation that Plaintiff was limping inside the store.

Quamina-Lee's conclusion that Plaintiff exhibited no signs of "anxiety, fear, or uncomfortable behavior" while shopping appears to be similarly unsupported because the report sheds no light on how that conclusion could be reached. Trying to discern emotional distress from a surveillance video at a Family Dollar Store, whose security

system is apparently so sophisticated that its cameras do not record the events taking place in the aisles, is an exercise in rank speculation.

The CDI report makes additional obvious errors.  It suggests, for example, that Plaintiff is lying about her inability to speak English because she is a naturalized United States citizen and therefore would have necessarily conducted a part of her naturalization process in English.  But the English-language requirement of the naturalization process is not a rule without exceptions; indeed, United States Citizenship and Immigration Services Form N-648 provides one.  Additionally, Section III of the CDI report, which explains why the case was referred to Quamina-Lee, discusses how someone *other than Plaintiff* was suspected exaggerating her claimed disabilities.

### B. *ALJ's Reliance on the CDI Report to Discredit Medical Evidence*

At Plaintiff's hearing, before the CDI report was admitted into the evidentiary record, Plaintiff's counsel strenuously objected to its introduction.  But before Plaintiff's counsel articulated the basis for the objection, the ALJ summarily stated that the objection was overruled.  Plaintiff's counsel then explained a panoply of reasons for why the CDI report should not enter the record: the CDI report contains incorrect legal conclusions; the CDI report contains medical opinions offered by someone other than a medical expert who, regardless of her training, lacks a sufficient basis to opine on such matters; the CDI report contains hearsay-within-hearsay from an unidentified witness who is not available for cross-examination; and, because the CDI report does not contain information that contradicts anything

10

Plaintiff has previously told her doctors, the CDI report is irrelevant for impeachment purposes.

After hearing these justifications for Plaintiff's objection to the CDI report, the ALJ in response simply noted that the Federal Rules of Evidence did not apply to her. She then reassured the Plaintiff that she would not rely on the CDI report for "legal" conclusions – only observations. Without any additional discussion, the CDI report was admitted into evidence. But contrary to the ALJ's stated intent, the ALJ ultimately relied heavily on the opinions and speculation included in the CDI report, not just the factual observations of the investigator.

It is worth noting at this juncture of our analysis that Plaintiff has a long history associated with her mental impairments. On more than one occasion, Plaintiff has been involuntarily hospitalized pursuant to the Baker Act because, as a result of her schizoaffective and depressive disorders, she suffered from auditory hallucinations and posed a threat of physical harm to herself and others. Cognizant of this history, one of the medical experts who examined Plaintiff and opined about her mental condition – Paul Feria, Ph.D. – stated that Plaintiff's psychological issues interfered with her ability to focus on things beyond herself and that Plaintiff had impoverished judgment.

In determining Plaintiff's RFC, the ALJ expressly stated that she found the opinion of Dr. Feria to be "less persuasive" because his opinion was not consistent with the record as a whole. But rather than relying on specific contrary medical evidence, the ALJ then largely relied on *the CDI report* to explain that it would be

inconsistent with the evidence in this case to find that Plaintiff had "impoverished judgment" and lacked the ability to focus on things beyond herself because she did not display signs of anxiety, fear, or uncomfortable behavior in the checkout line at the Family Dollar Store.  In the view of the ALJ, the opinions of Dr. Feria – an expert previously appointed by the state agency to evaluate Plaintiff's mental condition – were not worthy of credibility simply because (1) Plaintiff was capable of purchasing groceries ten months before she met Dr. Feria and (2) Plaintiff reported feeling "better" two months after she met Dr. Feria – although notably she started taking a new antipsychotic medication called Abilify in the interim.

Despite acknowledging that the CDI report did not qualify as an acceptable medical source, the ALJ also relied on Quamina-Lee's *medical* opinion when she discredited Plaintiff's testimony regarding the intensity, persistence, and limiting effects of Plaintiff's hip pain; specifically noting that, according to the CDI report, Plaintiff's limp did not cause Plaintiff any "pain" or "discomfort."

The ALJ again relied on this investigator's speculative assessment, which assessment was done without actually talking to or engaging with Plaintiff, that Plaintiff actually lacked any "pain" or "discomfort" associated with her limp.  This rank speculation was then relied upon to disregard the medical opinions of John Catano, M.D., another consultative physician.  This doctor confirmed that Plaintiff walked with an abnormal gait and had decreased range of motion in her left hip *due to pain*. (D.E. 21 at 521). She also had degenerative changes throughout the spinal region coupled with left hip osteoarthritis and sclerosis. (D.E. 21 at 527). Dr. Catano

then confirmed that "[s]he seemed depressed." (D.E. 21 at 522). Hence he diagnosed her with a recent injury to her lower back leading to antalgic ambulation, depression, and left hip arthrosis.

Again, contrary medical evidence on this point was not the ALJ's focus. Instead, at least based on how the ALJ's findings were set forth, the doctor's conclusions were discounted largely "based on the record as a whole" and a material portion of which was the CDI report.

The ALJ, as well the Commissioner in her briefs seeking to sustain the findings below, relied on the established principle that hearsay is admissible in evidentiary hearings like those under the SSA statute and regulations.  That is undoubtedly true. *See* 42 U.S.C. § 405(b)(1) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); *Richardson v. Perales,* 402 U.S. 389, 410 (1971) ("Hearsay, under [the Social Security] Act, is . . . admissible up to the point of relevancy.").  The ALJ was thus correct in principle by admitting the CDI report over a blanket hearsay objection.  *See, e.g., Alaa M K A. v. Saul,* No. 20-CV-1066 (SRN/HB), 2021 WL 3023743, at *10 (D. Minn. July 1, 2021), *Report and Recommendation adopted sub nom. Alaa M K A. v. Kijakazi,* 2021 WL 3022699 (D. Minn. July 16, 2021).

But that general rule does not answer the real question presented in this case. Plaintiff argues that the ALJ erred by admitting the CDI report into the record over Plaintiff's objection without first explaining her substantive reasons for doing so and

thereby allowing this Court the opportunity to engage in meaningful appellate review.  Plaintiff relatedly contends that, to the extent hearsay can be admitted, it must still be reasonable reliable and relevant, but the ALJ never made a finding of reliability and deemed the report dispositive even though it was filled with rank speculation.

Plaintiff has a point.  The Supreme Court, for instance, recognized long ago in a Social Security disability case that hearsay is admissible in administrative proceedings and may amount to substantial evidence, but only where factors that assure the "underlying reliability and probative value" of the evidence are present in the record.  *Richardson*, 402 U.S. at 402.  Our circuit has followed and applied that standard to Social Security and other administrative proceedings in assessing whether hearsay evidence is legally sufficient to be dispositive in a given case.  *See, e.g., U.S. Pipe & Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir. 1979) (hearsay properly admitted and reliable); *Basco v. Machin*, 514 F.3d 1177, 1183 (11th Cir. 2008) (even if hearsay properly admitted, evidence gleaned from it was insufficient to amount to competent substantial evidence), *overruled on other grounds, Yarbrough v. Decatur Hous. Auth.*, 931 F.3d 1322 (11th Cir. 2019).

The first problem we confront here with this CDI Report is that it contains two level of hearsay: the investigator's findings and conclusions as well as the store manager's statements to the investigator about his recollections of the Plaintiff.  The ALJ never made any finding as to whether either type of hearsay testimony was reliable.  Nor do we know why she deemed medical conclusions from the declarants

to be reliable in the first place.  So the record at present does not allow us to affirm whether the report's contents are reliable enough to be deemed substantial evidence.

That presents us with an independent basis to remand for further proceedings. On this point, *Green v. Berryhill*, No. 16-cv-2890, 2018 WL 1225104, at *3-5 (M.D. Fla. Mar. 9, 2018), is instructive.  In *Green*, the ALJ admitted a similar report from the Cooperative Disability Investigation Unit into the evidentiary record over the claimant's objection.  *Id*. at *3.  The report contained statements concerning the claimant's physical and mental abilities from unidentified individuals who had been shown a photo of the claimant prior to their interviews.  *Id*. at *4.  The author of the report did not testify at the claimant's hearing, and the photo that purportedly depicted the claimant was never entered into evidence.  *Id*. at *5.  But when the claimant objected to the admissibility of a report that contained "unverifiable statements, from unidentified witnesses, who were shown an unauthenticated photograph" of the claimant, the ALJ summarily overruled the claimant's objections without articulating the basis for the ruling.  *Id*.  The ALJ then relied heavily on the report in assessing the claimant's RFC.  *Id*.

The Court in *Green* acknowledged that the Social Security Administration's Program Operations Manual System ("POMS") entitles the ALJ to consider the CDI reports among the totality of the evidence, and it also acknowledged that that the Federal Rules of Evidence do not apply in disability hearings.  *Id*.  "Nevertheless, given the ALJ's failure to provide an explanation for overruling the objections, the Court finds it was erroneous for the ALJ to accept the CDI report at face value."  *Id*.

As a result, the Court remanded the case to the Commissioner so that the ALJ could directly address the claimant's objections to the CDI report and develop the record as necessary. *Id.*

In our case, like in *Green*, the CDI report contained an assortment of dubious information and was admitted into the record over Plaintiff's objection without any substantive discussion concerning why the objection was being overruled. The ALJ overruled Plaintiff's objection before Plaintiff articulated why the CDI report should be excluded, and then, after hearing Plaintiff's arguments, the ALJ simply stated that the Federal Rules of Evidence did not apply to her decision. The ALJ then relied heavily upon the CDI report when crediting and discrediting the medical evidence during her RFC evaluation. That does not amount to a material finding of reliability for this type of hearsay evidence, the absence of which leaves us with a significant hole in the record. And certainly it supports Plaintiff's contention that substantial evidence is not present in the record to undermine the medical evidence supporting Plaintiff's alleged functional limitations.

To reiterate, the ALJ decided to discredit the opinions of Dr. Feira because his findings were inconsistent with the CDI report. Although the POMS clearly provides the ALJ with the option to rely upon the CDI report in evaluating the medical evidence before her, we agree with Plaintiff and our colleague in the Middle District of Florida that it presents a significant due process issue to rely heavily on an objected-to CDI report without first deeming it reliable enough to discredit tangible medical evidence. Plaintiff highlighted substantive deficiencies in the CDI report

when she objected to its inclusion in the record, and the ALJ's failure to address these purported deficiencies before relying heavily on the CDI report to make an RFC finding effectively precluded meaningful appellate review of Plaintiff's challenge to a critical piece of evidence.

We turn to the second problem in the case with respect to the CDI Report. Even if the procedural error were not enough to remand for further proceedings, on the face of the evidence that the ALJ relied upon we cannot find that it amounts to substantial evidence to discredit Plaintiff's supporting medical evidence. The Eleventh Circuit has noted that "it goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 4th 1094, 1108 (11th Cir. 2021). "None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis." *Id.* (reversing and remanding ALJ's RFC findings for further proceedings given insufficient evidence to discount medical testimony and plaintiff's testimony; "such capabilities—e.g., a good fund of information, fair insight, good judgment, good calculation abilities, and good abstract reasoning—say little to nothing about the capacity to work of a person suffering from the types of mental illnesses with which Simon was diagnosed.").

Here we have a great deal of daylight between the limited observations included in the CDI Report and the record evidence supporting Plaintiff's mental and physical limitations. For instance, the record does not support why shopping for basic

necessities for 19 minutes is sufficient to discredit the opinion of Dr. Feria, a trained psychologist, who had the benefit of a personal examination as well as many years of training.   Similarly, no finding was made why the hearsay evidence from a lay investigator who has no documented expertise in diagnosing mental disorders was worthy of casting aside opinion testimony from a qualified medical practitioner.  Yet, the ALJ relied upon the report to discredit the extent of Plaintiff's mental limitations in so far as it revealed:

> that the claimant did not display any signs of anxiety, fear, or uncomfortable behavior while walking outside the store, being around store employees and other customers, or when walking away from the register counter to look for another grocery item when shopping inside a store. . . . She demonstrated her ability to complete multiple transactions, while using an EBT card, as well as, paper currency and coins. . . . The claimant did not display any type of memory loss, as she was able to conduct her EBT transactions, in conjunction with a four-digit pin, apparently from memory.

[D.E. 21 at 34].

That is far more than relying on an investigator's first-hand observations. That amounts to admission of lay speculation and opinion testimony to "contradict" undeniably reliable expert testimony.   And the ALJ reaches this remarkable conclusion with nary a word about why the investigator's conclusions gleaned from a 19-minute drive-by are reliable and competent enough to sustain such a burden.[3]

The same holds true for her physical limitations.  There is no dispute that Plaintiff suffers from a host of severe orthopedic maladies.  And the medical evidence

---

3 The ALJ determined that Plaintiff only had a *moderate* limitation in the domains of (1) interacting with others; (2) concentrating, persisting, or maintaining pace and (3) adapting or managing oneself. (D.E. 21 at 25).

admitted in the record is replete with references to Plaintiff's continuous pain as a result.  But the ALJ found it significant, enough to discount medical opinions to the contrary, that the investigator could not observe palpable signs of pain or discomfort on Plaintiff's part during that 19-minute window into her state of mind.  That is except for a noticeable *limp* that both the investigatory and the store manager confirmed.  So it is difficult to understand how the ALJ could rely on this report alone to discredit Plaintiff's claims of debilitating pain, especially given the other evidence in the record.

The fact that the ALJ conferred such dispositive weight on this hearsay evidence amounts to material error in the Step Four analysis.  The ALJ reached an RFC conclusion based on the "record as a whole" that was predominantly supported by the CDI Report.  Courts that have upheld the admission of CDI Reports in theory have rejected their probative value as medical evidence.  A "CDI report is not medical evidence," and "cannot in and of itself constitute medical evidence of normal functioning." *Alaa M.K.A.,* 2021 WL 3023743 at *10.  As another Court put it,

> The ALJ's use of non-medical, observational evidence from the CDI report to discredit the opinions of Plaintiff's treating physicians was error. *See Glessing v. Comm'r of Soc. Sec.,* No. 13-CV-1254 (BMC), 2014 WL 1599944, at *11 (E.D.N.Y., Apr. 21, 2014) ("[The CDI] report is not medical evidence."). For example, the ALJ concluded that Plaintiff was capable of bearing weight, prolonged standing and walking, and climbing stairs based on the investigators' one-time observation of him "stand[ing] on one leg, ostensibly to stretch his knee and quadriceps, with only holding onto a fence for support." . . . However, "the ALJ has not adequately explained how this evidence of lay opinion based on three [partial days] of surveillance can overcome the medical opinions in the record."

*Virgil v. Saul,* No. 19-CV-1473 (PKC), 2020 WL 5747278, at *10 (E.D.N.Y. Sept. 25, 2020) (reversing and remanding for further proceedings because ALJ relied on CDI Report as dispositive evidence of RFC assessment) (quoting *Holliday v. Colvin,* 195 F. Supp. 3d 1192, 1202-04 (D. Kan. 2016) (reversing and remanding based in part on reliance on CDI report, where "potential for error is heightened here because the ALJ relied instead on the report of a lay investigation based on approximately three hours of surveillance along with the report of one psychologist . . . to overcome the largely consistent reports of three treating psychiatrists and of a psychologist who had formed his opinion after reviewing all of the medical records")).

In sum, though the ALJ could certainly consider the CDI report to the extent she found it reliable, it was error to rely so heavily on the opinions and conclusions found in the report to contradict far more reliable medical evidence in the record.  We cannot simply affirm the ALJ's RFC finding that in part discounts substantial medical evidence in this manner.  *See also Altman v. Colvin,* No. 14-CV-30190VKAR, 2015 WL 5145541, at *3 (D. Mass. Sept. 1, 2015) (reversing and remanding where ALJ's failure to the explain the weight assigned to CDI report was error requiring remand where report used to "discredit Plaintiff's testimony and his reports about his condition to his treating providers.").

The Commissioner maintains that, even if the ALJ erred by any over-reliance on the CDI report, the denial of disability can still be affirmed because any error was harmless.  The Commissioner discounts the actual level of reliance the ALJ placed on the CDI report, arguing that instead she focused on the conflicting medical evidence

in the record for the most part.  We acknowledge that there may have been sufficient evidence gathered below, strictly based on the medical evidence, to sustain an RFC finding, but only in theory.  When we review the ALJ's findings in context, however, that determination simply cannot definitively be made.   There is a running skepticism throughout the ALJ's findings about the credibility of the evidence supporting the Plaintiff's position, much or all of which goes back to the questions raised by the CDI report.  We disagree with the Commissioner's ultimate conclusion that the ALJ did not rely on the report as medical evidence.  To the contrary, any objective reading of the findings reveals that the ALJ granted the report great weight in the face of the Plaintiff's medical evidence.

At the very least, that is clearly true with respect to Plaintiff's alleged mental limitations.  If one only analyzes the documentation relating to her mental state and history, we are hard pressed to agree that this multi-year history only results in a "moderate" limitation in discrete aspects of her life.  And we strongly disagree that this case is not akin to *Smith* in that respect.

But the Commissioner is correct that *we* are not empowered to simply reevaluate the evidence anew.  That is the ALJ's function based on competent evidence in the record.  We find only that she placed too much weight on this hearsay report in reaching her findings, and did so without making requisite findings of reliability in the process.  A fresh look at the evidence without this errant thumb on the scale is required.  And we are bound to reach this conclusion because we have no confidence that the ALJ's erroneous application of the law did not materially affect

the outcome.  *See, e.g., Jacobus v. Comm'r of Soc. Sec.,* 664 F. App'x 774, 778 (11th Cir. 2016) (ALJ's errors only "considered harmless if it is clear that the error did not affect the ALJ's ultimate determination"); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (reversing ALJ where "substantial evidence does not support the ALJ's conclusion that Schink's mental impairments were not severe.  On this record, Schink's impairments due to his bipolar disorder, anxiety, and mood disorder cannot be considered only 'slight' or 'trivial' abnormalities. Schink's mental-health issues were serious enough that he was referred to and saw various mental-health professionals over a period of years.") (error in severity finding could not be deemed harmless for proper RFC analysis).

## IV.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 26] be **GRANTED**, that Defendant's motion for summary judgment [D.E. 31] be **DENIED**, and that the decision of the Commissioner be **REMANDED**.  The action should be CLOSED.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have seven (7) days from this date within which to file written objections, if any, with the District Judge.  If objections are filed, the responding party has no greater than seven (7) days to respond.  No replies shall be filed.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions

included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of February 2023.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
Chief Magistrate Judge