UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-23917-CIV-ALTONAGA/Torres

MARTA GONZALEZ CASTILLO,

     Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner for Social Security,

     Defendant.

_____/

## ORDER

On November 5, 2021, Plaintiff, Marta Gonzalez Castillo, filed a Complaint [ECF No. 1] seeking review of Defendant's decision denying her Supplemental Security Income. The matter was referred to Magistrate Judge Edwin G. Torres for a report and recommendation on dispositive matters. (*See* Clerk's Notice [ECF No. 2]). Thereafter, Plaintiff filed a Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 26]; and Defendant, the Acting Commissioner of Social Security, filed a Cross Motion for Summary Judgment ("Defendant's Motion") [ECF No. 31].

On February 17, 2023, the Magistrate Judge entered his Report and Recommendation ("Report") [ECF No. 39], recommending the Court grant Plaintiff's Motion; deny Defendant's Motion; and remand the decision of the Administrative Law Judge ("ALJ"). (*See* Report 22). On February 23, 2023, Defendant timely filed his Objections [ECF No. 40], to which Plaintiff filed a Response [ECF No. 43]. For the following reasons, the Court declines to adopt the Report, sustains Defendant's Objections, grants Defendant's Motion, and denies Plaintiff's Motion.

## I. BACKGROUND

On July 25, 2019, Plaintiff applied for Supplemental Security Income, claiming a disability onset of June 27, 2017.  (*See* Admin. R. [ECF No. 21] 273; Report 2). [1]  After Defendant denied Plaintiff's application and reconsideration request, Plaintiff requested and received a hearing with an Administrative Law Judge ("ALJ") on January 20, 2021.  (*See* Report 2).  The ALJ delivered an unfavorable decision on March 5, 2021.  (*See id.*).

In coming to that decision, the ALJ conducted the required five-step sequential inquiry into Plaintiff's alleged disability. [2]  (*See* Admin. R. 27–42).  Relevant here is the residual functioning analysis ("RFC") assessment performed before the fourth step.  *See Winschel*, 631 F.3d at 1178.

To reach her RFC assessment, the ALJ extensively reviewed the record and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Admin. R. 32 (alterations added)).  The ALJ then listed the evidence she relied upon, starting with evidence

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] Social Security regulations require the following five-step inquiry into whether an applicant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functioning capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); other citation omitted).

of Plaintiff's alleged disability due to physical impairments.  (*See id.* 32–35).

First, the ALJ noted that Plaintiff sought treatment for left hip pain from Dr. Martha Perez in July 2019.  (*See id.* 32 (citing *id.* 507)).  Plaintiff reported being fine, and no treatment was prescribed.  (*See id.* (citing *id.* 511–12)).  In an August 2019 follow-up visit, Plaintiff again reported feeling fine, was not in acute distress, and had no cardiovascular symptoms; but she tested positive for arthralgias and hip pain with motion.  (*See id.* 32–33 (citing *id.* 502–03)).  Her hips were tender but appeared normal; she had a normal gait and stance.  (*See id.* 33 (citing *id.* 503)).

Second, the ALJ discussed Plaintiff's participation in a physical examination with Dr. John J. Catano in September 2019.  (*See id.* (citing *id.* 525)).  Dr. Catano noted that Plaintiff walked with an abnormal gait and found that a wheelchair would be necessary at that time.  (*See id.* (citing *id.* 525)).  A 2019 x-ray of Plaintiff's left hip showed no evidence of an acute fracture or displacement.  (*See id.* (citing *id.* 532)).

Third, the ALJ reviewed an October 2019 investigation of Plaintiff by Vicky Quamina-Lee, an investigator at the Cooperative Disability Investigations ("CDI") Unit, a program that fights fraud in social security disability programs.[3]  (*See id.* 33–34 (citing *id.* 585), 584).  The product of that investigation was a report ("CDI Report").  (*See id.* 33).

The CDI Report was based on a review of databases; a 19-minute video of Plaintiff at a Family Dollar Store on October 5, 2019; and an interview with the store's unnamed manager. (*See id.* 34 (citing *id.* 585)).  The video depicted a limping Plaintiff shopping by herself without any assistance from tools or people.  (*See id.* 33–34 (citing *id.* 585–86)).  The CDI Report noted that Plaintiff "did not display any signs of anxiety, fear, or uncomfortable behavior[;]" or "memory loss, as she was able to conduct her [Electronic Benefits Transfer] transactions, in

---

[3] Cooperative Disability Investigations, https://oig.ssa.gov/cdi/ (last visited Mar. 17, 2023).

conjunction with a four-digit pin, apparently from memory[;]" and despite having a "limp, she did not show any discomfort or pain" and did not "display[] a slow gait, a need to stop and rest, or any discomfort or pain caused by her limping" while shopping.  (*Id.* (alterations added; quoting *id.* 585–86); *see also id.* 588–92).  On the same day the video was taken, Quamina-Lee showed a picture of Plaintiff to the store manager; the manager recognized Plaintiff and said she is a regular customer who usually shops by herself, does not use a cane or walker, and is known for her limp.  (*See id.* 34 (citing *id.* 586)).

Fourth, the ALJ noted Plaintiff's January 2020 visit to Jackson South Community Hospital for back pain.  (*See id.* 34 (citing *id.* 762)).  During the visit, Plaintiff reported her back pain as moderate, but a physical examination reflected that her back was not tender, and she had a normal range of motion.  (*See id.* (citing *id.* 764)).

Fifth, the ALJ addressed a June 2020 follow-up with Dr. Martha Perez, at which time Plaintiff stated she had no muscle aches, was feeling better after losing weight, and was not taking over-the-counter medication.  (*See id.* (citing *id.* 695–96)).

Sixth, the ALJ discussed Plaintiff's August 2020 physical examination with Dr. Rosanna Perez.  (*See id.* 35 (citing *id.* 639)).  The examination notes reflected that Plaintiff had a limp and used a walker for assistance.  (*See id.* (citing *id.* 638)).  During the examination, Plaintiff could only walk six feet without support before having to sit down due to pain; she also could not stand on her left foot due to hip pain, but she could stand on heels and toes.  (*See id.* (citing *id.* 638)).  Plaintiff's motor strength was "5/5" in all major muscle groups, while her grip strength was "5/5" in both hands.  (*Id.* (quoting *id.* 639)).

Seventh, the ALJ pointed to Plaintiff's August 2020 visit to West Kendall Baptist

Hospital[4] for back and hip pain.  (*See id.* (citing *id.* 858)).  During the visit, Plaintiff said she had been taking Ibuprofen; the visit documentation stated there was no back pain.  (*See id.* (citing *id.* 858)).  She was diagnosed with lumbar back sprain and a left hip contusion, but by the time she was discharged from the hospital, her condition had improved with reduced pain after taking medication.  (*See id.* (citing *id.* 864)).

Eighth, the ALJ reviewed Plaintiff's September 2020 follow-up meeting with Dr. Martha Perez.  (*See id.* (citing *id.* 664)).  While Plaintiff was referred for osteoarthritis treatment, no medication was prescribed.  (*See id.* (citing *id.* 667)).

After reviewing the medical record pertaining to Plaintiff's physical ailments, the ALJ turned to medical evidence regarding Plaintiff's mental conditions.  (*See id.* 35).  The ALJ noted that Plaintiff's "medical history is also inconsistent with her allegations of disability due to mental impairments."  (*Id.*).

First, the ALJ reviewed multiple sessions Plaintiff had at Community Health of South Florida ("CHI").  In March 2019, Plaintiff had a medication management examination at CHI, where she denied having hallucinations or other perceptual disturbances and stated she was "doing ok[,]" but mentioned that she felt depressed and stressed.  (*Id.* (alteration added; quoting *id.* 460)).  In a July 2019 follow-up session, she reported that she remained very depressed, was excessively irritable, and had been hearing voices; but she declined to be hospitalized.  (*See id.* (citing *id.* 457)).  Based on her August 2019 follow-up session, a CHI evaluation indicated she had coherent speech, no delusions, an intact memory, fair judgment and insight, and was oriented in all spheres.  (*Id.* 36 (citing *id.* 454, 538)).  Plaintiff also denied having any perceptual disturbances and was found to have had a goal-directed and logical thought process.  (*See id.*

---

[4] The ALJ refers to this August 2020 visit as occurring at "Jackson hospital [sic]" (Admin. R. 35, 38, 40), but the exhibit and information she cites to refer to Plaintiff's August 2020 visit to West Kendall Baptist Hospital (*see id.* 845–84).

(citing *id.* 454, 538)).

In a September 2019 session, Plaintiff said she was continuing to experience perceptual disturbances, but the treatment record noted she started a new medication and was tolerating it well. (*See id.* 36 (citing *id.* 541)). By Plaintiff's April 2020 session, she continued to have mood and motivation improvement, denied having hallucinations, and was prescribed the same medications. (*See id.* (citing *id.* 725)). In a September 2020 session, Plaintiff stated she was "feeling better" since getting on a new medication; she was less anxious and depressed, was having better sleep, and did not have any hallucinations. (*Id.* 37 (quoting *id.* 669)).

During an October 2020 session, Plaintiff stated that she was improving with new medication, had no more auditory hallucinations, and her mood was better despite still suffering from some depression. (*See id.* (citing *id.* 656)). While attending a November 2020 session, Plaintiff said she felt "less depressed but [] still anxious" and denied having perceptual disturbances. (*Id.* (alteration added; quoting *id.* 646)). Her memory was intact; she was alert, oriented in all spheres, and possessed good judgment and insight. (*See id.* (citing *id.* 647)). During her January 2021 session at CHI, Plaintiff admitted to not taking her most recent medication and said she had trouble sleeping. (*See id.* (citing *id.* 986)). She was calm during the session, but she mentioned racing thoughts and auditory hallucinations. (*See id.* (citing *id.* 986)).

Second, the ALJ noted Plaintiff's follow-up session with Dr. Martha Perez in August 2019. (*See id.* (citing *id.* 502)). No neurological deficits were observed, Plaintiff said she was "feeling fine[,]" and her depression screen showed "mild to moderate symptoms." (*Id.* (alteration added; quoting *id.* 502, 504)).

Third, the ALJ described Plaintiff's September 2019 examination with Dr. John J. Catano. (*See id.* 36 (citing *id.* 525)). The mental portion of the examination reflected that

Plaintiff was orientated, had no psychotic features, got along well with staff, and her cognitive and language skills were intact.  (*See id.* (citing *id.* 527)).

Fourth, the ALJ reviewed Plaintiff's August 2020 examination with Dr. Paul Feria.  (*See id.* (citing *id.* 628)).  Dr. Feria noted that Plaintiff was emotionally withdrawn, passive, and lethargic.  (*See id.* (citing *id.* 631)).  Plaintiff was found to have been oriented in all spheres, but she had poor focus and impoverished judgment.  (*See id.* 37 (citing *id.* 631–32)).  Her diagnosis was schizoaffective disorder, depressive type.  (*See id.* (citing *id.* 632)).

Fifth, the ALJ evaluated the persuasiveness of the various items in evidence, including the opinions of state agency consultants, Dr. Jermaine Roberson, Dr. Nicholas Rios, Dr. Tara Reynolds, and Dr. Samuel Hopkins, all of whom found that Plaintiff was not disabled.  (*See id.* 38–40).

After reviewing all this evidence, the ALJ concluded that Plaintiff had the RFC to perform:

> [S]edentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can had [sic] occasional exposure to hazards.  She can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, within the scope of Reasoning Level 2.  She could respond to demands and adapt to changes in a work setting.  In addition, the claimant could work at an appropriate and consistent pace.  She can occasionally interact with supervisors, coworkers, and the general public.

(*Id.* 40 (alteration added)).  The ALJ then moved on to step four, where she concluded that Plaintiff could not perform her old work as a housekeeper.  (*See id.*).

At step five, based on a vocational expert's testimony; and Plaintiff's age, education, work experience, and RFC, the ALJ concluded there is work in the national economy Plaintiff could perform.  (*See id.* 41).  Accordingly, the ALJ found that Plaintiff was not disabled.  (*See*

*id.*).  On September 4, 2021, the Appeals Counsel denied Plaintiff's request to review the ALJ's March 5, 2021 decision.  (*See id.* 6).  After that unfavorable ruling from the Appeals Counsel, Plaintiff filed this action.

## II.  LEGAL STANDARDS

In reviewing the denial of social security benefits, a court must determine "whether [the ALJ's] conclusion, as a whole, was supported by substantial evidence in the record." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018) (alteration added; citation and quotation marks omitted)).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g) (alteration added).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Washington*, 906 F. 3d at 1358 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

When a magistrate judge's "disposition" has been properly objected to, district courts must review the disposition *de novo*.  Fed. R. Civ. P. 72(b)(3).  Given Defendant's Objections, the Court has reviewed the Report *de novo*.

## III.  DISCUSSION

In her Motion, Plaintiff raises three arguments to reverse the ALJ's decision: (1) the ALJ committed reversible error by relying on the CDI Report to rebut medical findings, (2) the ALJ's RFC analysis was unsupported by substantial evidence, and (3) Defendant failed to sustain his burden of establishing the existence of other work in the national economy that Plaintiff could perform.  (*See* Report 7; *see generally* Pl.'s Mot.).

The Magistrate Judge found Plaintiff's first argument persuasive and determined that remand should be granted on that basis.  (*See generally* Report).  Specifically, the Magistrate

Judge found that the ALJ committed procedural error by admitting the CDI Report without both evaluating its reliability and addressing Plaintiff's objections to its entry into evidence.  (*See id.* 16–17).  The Magistrate Judge also agreed with Plaintiff's second argument and found because the ALJ overly relied on the CDI Report, the ALJ did not have substantial evidence to discredit Plaintiff's supporting medical evidence and reach her RFC determination.  (*See id.* 17–22).  The Magistrate Judge did not address Plaintiff's third argument.

In his Objections, Defendant argues that the ALJ was not required to make any findings regarding the reliability of the CDI Report because an ALJ may admit evidence inadmissible under the rules of evidence, the CDI Report was material to the case, Plaintiff failed to call any witnesses to challenge the CDI Report's truth or relevance, and there is no case law requiring an ALJ's reliability analysis of the CDI Report.  (*See* Objs. 1–4).  Defendant also argues that the ALJ did not put too much weight on the CDI Report; the ALJ weighed the totality of the evidence and cited substantial evidence to support her RFC determination.  (*See id.* 4–7).  After a review of the Administrative Record and relevant case law, the Court is persuaded by Defendant's Objections.  Accordingly, the Court reviews *de novo* the admission of the CDI Report, the ALJ's RFC determination, and the ALJ's finding that there is work in the national economy for Plaintiff — thereby addressing all three of Plaintiff's arguments.

### A.  Admission of the CDI Report

Plaintiff objected to the introduction of the CDI Report in evidence at the ALJ hearing, but the ALJ overruled the objection.  (*See* Report 10).  Plaintiff then argued the CDI Report contained incorrect legal conclusions, medical opinions from a non-medical expert, hearsay within hearsay from an unidentified store manager; and it was irrelevant for impeachment because it did not contradict any statements Plaintiff made to her doctors.  (*See id.*).  The ALJ

responded that the Federal Rules of Evidence do not apply to her and that she would use the CDI Report only for its observations, not legal conclusions. (*See id.* 11). The ALJ then admitted the CDI Report. (*See id.*).

The issue is whether the ALJ committed procedural error by summarily admitting the CDI Report without addressing Plaintiff's objections or evaluating its reliability. The Magistrate Judge noted that the CDI Report contains two levels of hearsay: Quamina-Lee's determinations and the store manager's statements. (*See id.* 14). Consequently, the Magistrate Judge found that while evidence that would otherwise be excluded under the rules of evidence is admissible in hearings before the Commissioner of Social Security, the ALJ committed reversible error by not evaluating the reliability and relevancy of the CDI Report — which contained obvious "rank speculation" by non-medical experts — before using it to offset medical evidence. (*Id.* 14; *see id.* 13–16). Defendant argues the Magistrate Judge erred in his analysis because the ALJ was not required to evaluate the CDI Report's reliability; such reports are widely used in social security hearings; and Plaintiff decided not to subpoena Quamina-Lee for the hearing, thereby forgoing the opportunity to challenge the CDI Report. (*See* Objs. 1–4). The Court agrees with Defendant.

The Magistrate Judge correctly noted that "[e]vidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure." (Report 13 (alteration added; quoting 42 U.S.C. § 405(b)(1))). The Magistrate Judge also identified the central question of whether the ALJ must make a relevancy evaluation before admitting hearsay at such a hearing: "Hearsay, under [the Social Security] Act, is . . . admissible up to the point of relevancy." (*Id.* (alterations in original; quoting *Richardson*, 402 U.S. at 410)). Yet, the Magistrate Judge and Defendant disagree about how *Richardson* applies to this case. (*Compare id.* 14 *with* Objs. 1–4).

CASE NO. 21-23917-CIV-ALTONAGA/Torres

In *Richardson*, the Supreme Court was presented with a social security case where a medical report containing hearsay was admitted into evidence and found to constitute substantial evidence for an adverse decision against a social security applicant. 402 U.S. at 402. This raised the question of "what procedural due process requires with respect to examining physicians' reports in a social security disability claim hearing." *Id.* The Supreme Court concluded that despite the medical report containing hearsay, it could still constitute substantial evidence if there are factors that "assure [its] underlying reliability and probative value[.]" *Id.* (alterations added).

Defendant argues that *Richardson* is inapplicable to the present case because *Richardson* did not deal with a report from the CDI. (*See* Objs. 1–2). This ignores that the Eleventh Circuit has applied *Richardson* to hearsay generally in administrative proceedings, not just to medical reports. *See J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1354 (11th Cir. 2000) (citing *U.S. Pipe & Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir. 1979) (citing *Richardson*, 402 U.S. at 402–06)); footnote call number omitted); *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008) (citing *J.A.M Builders, Inc.*, 233 F.3d at 1354), *overruled on other grounds by Yarbrough v. Decatur Hous. Auth.*, 931 F.3d 1322 (11th Cir. 2019). From *Richardson*, the Eleventh Circuit found there are four factors that show hearsay's probative value and reliability in an administrative proceeding:

> whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.

*J.A.M Builders, Inc.*, 233 F.3d at 1354. Based on those factors, the CDI Report — despite including hearsay from Quamina-Lee and an unnamed Family Dollar Store manager — was probative and reliable such that the ALJ properly admitted it in evidence.

First, there is no indication that the Family Dollar Store manager was biased or had any interest in the outcome of Plaintiff's case. (*See* Admin. R. 591). If anything, the manager's acknowledgment that Plaintiff is a regular customer would suggest the manager has no ill-will toward Plaintiff. (*See id.*).

Second, Plaintiff had access to the CDI Report before the hearing with the ALJ and could have subpoenaed Quamina-Lee to testify. The CDI Report was entered in the record on November 18, 2019 (*see id.* 100), it noted that the investigator was "available to testify" (*id.* 592), and the hearing did not take place until January 20, 2021 (*see id.* 48).

Third, the information in the CDI Report was not self-contradictory. Quamina-Lee watched the 19-minute Family Dollar Store video (*see id.* 588); she observed that Plaintiff was able to shop by herself despite a limp, performed various actions requiring dexterity, interacted with store employees, and checked out using a point-of-sale system (*see id.* 588–91). From those observations and confirmation from the store manager that Plaintiff regularly shops by herself, Quamina-Lee concluded that Plaintiff did not display any functional limitations; did not show any discomfort or pain despite a limp; and did not display signs of anxiety, fear, or uncomfortable behavior. (*See id.* 591–92).

Finally, CDI reports have inherent reliability because the Social Security Administration provides guidance on their usage for disability determinations. *See Green v. Berryhill*, No. 8:16-cv-2890, 2018 WL 1225103, at *5 (M.D. Fla. Mar. 9, 2018) (finding that while a court should not take a CDI report at face value, the Social Security Administration's guidance "addresses the use of CDI reports in disability determinations" and provides "that an ALJ shall consider CDI reports"). Specifically, the Social Security Administration's Program Operations Manual System ("POMS") — in a section titled "Disability Hearing Officer's Use of Cooperative Disability

Investigations Unit (CDIU) Report of Investigation (ROI) Evidence" — provides the following guidance to decision makers using a report from the CDI:

> Consider a [CDI report] in the disability determination process along with all other evidence in file. . . . The majority of [a CDI report] is a report of third party interviews by highly skilled interviewers. Consider the reports, with the totality of the evidence, and evaluate to determine whether the other evidence supports the report. The [CDI report] helps to evaluate the truthfulness, consistency, validity, and supportability of an individual's statements. . . . Surveillance information in both video and narrative form can provide snapshots of an individual's observed functional ability. Consider this information with all the other evidence to reach conclusions about the individual's medical impairment(s) and, if the individual is able to work on a sustained basis.

POMS DI § 33025.036(C) (alterations added).

Instructive here, the court in *Green* determined that an ALJ improperly admitted a report from the CDI because the ALJ failed to address the plaintiff's objections. *See* 2018 WL 1225103, at *5. The *Green* court remanded the case to the Commissioner of Social Security so the objections could be addressed, and the record developed. *See id.* The Magistrate Judge determined that the instant case is analogous to *Green*. (*See* Report 15–16). The Court disagrees.

In contrast to this case, in *Green* the "author of the CDI report was never produced at the hearing[,]" and the "CDI report was examined and considered by numerous physicians whose findings the ALJ relied upon." 2018 WL 1225103, at *5 (alteration added). Here, the CDI report was produced over a year before the hearing, and the Administrative Record indicates that only the ALJ reviewed the CDI Report. (*See generally* Admin. R.). Also, Plaintiff had over a year to subpoena Quamina-Lee and ascertain the identity of the unknown manager. (*See id.* 48, 100, 592); *Alaa M.K.A. v. Saul*, No. 20-cv-1066, 2021 WL 3023743, at *5 (D. Minn. July 1, 2021), *report and recommendation adopted sub nom. Alaa M.K.A. v. Kijakazi*, No. 20-cv-1066, 2021 WL 3022699 (D. Minn. July 16, 2021) (distinguishing the reliability of CDI reports where

the identity of the author is known and finding a CDI report reliable because the "CDI report discloses the names of the investigators, and if [p]laintiff's counsel had wanted to independently question the [unknown interviewees] . . . it would have been a simple matter for counsel to ascertain their identities" (alterations added)).  There are thus factors in this case that assured the "underlying reliability and probative value" of the CDI Report.  *Richardson*, 402 U.S. at 402; *see J.A.M Builders, Inc.*, 233 F.3d at 1354 (finding the ability to subpoena the declarant as protecting the probative value and reliability of hearsay in a social security hearing).

Finally, the Court disagrees with the Magistrate Judge's characterization of both the CDI Report and the ALJ's usage of it.  The Magistrate Judge noted that the ALJ acknowledged the CDI Report was not a medical opinion and that she would admit it only for its observations, not legal conclusions.  (*See* Report 11).  But the Magistrate Judge went on to say that "contrary to the ALJ's stated intent, the ALJ ultimately relied heavily on the opinions and speculation included in the CDI [R]eport, not just the factual observations of the investigator."  (*Id.* (alteration added)).  Specifically, the Magistrate Judge stated that "according to the CDI [R]eport, Plaintiff's limp did not cause Plaintiff any 'pain' or 'discomfort[]'" and accuses the ALJ of using this "speculative assessment" to conclude that "Plaintiff actually lacked any 'pain' or 'discomfort' associated with her limp."  (*Id.* 12 (alterations added)).

The record does not support the Magistrate Judge's characterization.  The CDI Report states that Plaintiff "did not *display* any signs of anxiety, fear, or uncomfortable behavior" or "*show* any discomfort or pain" during her shopping trip to Family Dollar Store.  (Admin. R. 586 (emphasis added)).  Contrary to the Magistrate Judge's interpretation, the CDI Report reflected Quamina-Lee's *observations* and not any medical conclusions about Plaintiff's actual physical state.  Consequently, in reviewing the CDI Report, the ALJ focused on those *observations* when

14

she stated that the "CDI report found that the claimant did not *display* any signs of anxiety, fear, or uncomfortable behavior" and she did not "*show* any discomfort or pain" during her shopping trip.  (*Id.* 33–34 (emphasis added)).

Notably, the Magistrate Judge takes issue with Quamina-Lee not concluding that a limp is itself a display of pain, which the Magistrate Judge asserts is a speculative medical opinion.  (*See* Report 9).  The Magistrate Judge's interpretation of a limp — based on an analogy of an athlete limping off the field immediately after being injured — is that a limp is a display of pain.  (*See id.*).  In other words, he argues that it was wrong for an investigator to make a conclusion about what a limp means by himself using a questionable analogy to reach a different conclusion about what a limp means.

In fact, the ALJ properly recognized the CDI Report "is not from an acceptable medical source[;]" and Quamina-Lee found that "*apart from a limp*, [Plaintiff] never displayed a slow gait, a need to stop and rest, or any discomfort or pain caused by her limping."  (Admin R. 40 (alterations and emphasis added; citation omitted)).  Both Quamina-Lee and the ALJ fully acknowledged the limp but noted there was nothing *apart* from the limp to suggest the limp was causing discomfort or pain.  Such an observation is within the acceptable use of video to "provide snapshots of an individual's observed functional ability."  POMS DI § 33025.036(C).

In short, the ALJ properly admitted the CDI Report, which was based on observations and had factors supporting its reliability.  Thus, the Court turns to Plaintiff's second argument regarding whether the ALJ had substantial evidence for her RFC determination.

**B.  Substantial Evidence to Support the ALJ's RFC Determination**

In reviewing the denial of social security benefits, a court must determine "whether [the ALJ's] conclusion, as a whole, was supported by substantial evidence in the record."

*Washington*, 906 F.3d at 1358 (alteration added; citation and quotation marks omitted)).  Again, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g) (alterations added).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Washington*, 906 F. 3d at 1358 (quoting *Richardson*, 402 U.S. at 401).

In agreeing with Plaintiff's second argument, the Magistrate Judge found that the ALJ did not have substantial evidence to discredit Plaintiff's supporting medical evidence and reach her RFC conclusion because her reasoning was "predominantly supported by the CDI Report[]" and placed "too much weight on this hearsay report[.]"  (Report 17, 19, 21 (alterations added)).  The Magistrate Judge correctly noted that a report by the CDI is not medical evidence and cannot itself constitute medical evidence or refute medical evidence.  (*See id.* 19 (quoting *Alaa M.K.A.*, 2021 WL 3023743 at *10)).  Yet, the ALJ did not overly rely on the CDI Report and instead used it in conjunction with Plaintiff's own testimony and medical evidence as substantial evidence for her RFC conclusion that Plaintiff can perform sedentary work.  (*See* Admin R. 31–40).  The Court summarizes the ALJ's analysis of the persuasiveness of the various pieces of evidence to show why.

As an initial matter, the ALJ noted that Plaintiff's alleged symptoms — such as her claimed anxiety, fear, and mobility issues — could be caused by Plaintiff's documented impairments, but the evidence in the record did not support the intensity of the alleged symptoms.  (*See id.* 32).  Indeed, Plaintiff's own testimony suggested this.  The ALJ pointed out that Plaintiff testified her hip hurt when she walked "too much" but there were days when "it did not hurt a lot[]" and she only used a walker when she went to the clinic.  (*Id.* (alteration added)).

The ALJ found that opinions from state agency psychological consultants, Drs. Jermaine Robertson and Nicholas Rios, were "somewhat persuasive." (*Id.* 38 (citing *id.* 99–114, 117–35)). Both doctors found that Plaintiff was not disabled. (*See id.*). Based on the evidence, the ALJ noted that while Plaintiff was more limited in the ability to process information or interact with others than those doctors observed, record evidence did not support greater limitations than the ALJ's RFC determination. (*See id.*). To support this proposition, the ALJ pointed to Plaintiff's September 2020 examination at CHI, where Plaintiff said she was feeling better after taking new medication, was less anxious, less depressed, was not hallucinating, and was getting better sleep. (*See id.* (citing *id.* 669)). Additionally, during an October 2020 follow-up examination at CHI, Plaintiff said she no longer had audio hallucinations, was doing well on new medication, and had a better mood. (*See id.* (citing *id.* 656)).

Similarly, the ALJ found that the opinions of state agency medical consultants, Drs. Tara Reynolds and Samuel Hopkins, both of whom found that Plaintiff was not disabled, were "somewhat persuasive." (*Id.* (citing *id.* 114, 134)). Again, the ALJ found that Plaintiff was more limited than those doctors opined, but that the record evidence did not provide for greater limitations than what the ALJ concluded. (*See id.*). As an example, the ALJ noted that during Plaintiff's June 2020 follow-up with Dr. Martha Perez, Plaintiff reported she had no muscle aches, was feeling better after weight loss, and was not taking any over-the-counter medication. (*See id.* (citing *id.* 695–96)). Additionally, during Plaintiff's August 2020 visit to West Kendall Baptist Hospital, Plaintiff said she was treating pain with Ibuprofen and was found to have had normal range of motion with left-hip tenderness. (*See id.* 38–39 (citing *id.* 858)). By discharge, her condition had improved, and she reported that her pain was better after taking medication. (*See id.* 39 (citing *id.* 858)).

Because it was also unsupported by the record, the ALJ found that Dr. John J. Catano's opinion was not persuasive.  (*See id.* (citing *id.* 525–33)).  Dr. Catano's opinion was that Plaintiff had antalgic ambulation and required a wheelchair.  (*See id.* (citing *id.* 527)).  The ALJ noted this was inconsistent with both Plaintiff's January 2020 visit to Jackson South Community Hospital, which revealed she had normal range of motion (*see id.* (citing (*id.* 761, 763)); and the CDI Report, which observed that she could walk and shop without assistance while displaying dexterity (*see id.* (citing *id.* 586)).

Likewise, the ALJ found the opinion of Dr. Paul Feria to be less persuasive.  (*See id.* 39 (citing *id.* 628–32)).  Dr. Feria found that Plaintiff's psychological issues made it difficult to focus beyond herself and that she also had poor judgment.  (*See id.* (citing *id.* 631)).  In finding Dr. Feria's opinion inconsistent with the record as a whole, the ALJ noted that the CDI Report found that Plaintiff did not display any signs of anxiety, fear, or uncomfortable behavior while shopping; she was able to complete transactions involving a pin number; and she did not display any signs of memory loss.  (*See id.* (citing *id.* 584–85)).  Additionally, the ALJ referred to the October 2020 follow-up examination at CHI, where Plaintiff stated that she was improving with medication, was not having auditory hallucinations, and that she was feeling better.  (*See id.* (citing *id.* 656)).

In contrast, the ALJ found Dr. Rosanna Perez's opinion persuasive.  (*See id.* (citing *id.* 633–45)).  Dr. Perez found that Plaintiff had "5/5" motor strength in all major muscle groups and "5/5" grip strength in both hands along with the dexterity and the ability to move without assistance (*see id.* 39 (citing *id.* 639)), which the ALJ found to be consistent with Plaintiff's August 2020 West Kendall Baptist Hospital visit that revealed Plaintiff's normal range of motion and ability to manage her pain with pain medication (*see id.* 39–40 (citing *id.* 858, 864)).

CASE NO. 21-23917-CIV-ALTONAGA/Torres

The ALJ also found the CDI Report to be persuasive because it was consistent with the record as a whole.  (*See id.* 40 (citing *id.* 582–93)).  While the ALJ noted that it was not an "acceptable medical source, it is based on observations made by a professional disability investigator who based her findings on store videos and eyewitness accounts of the claimant's actions."  (*Id.*).

Notably, the Magistrate Judge found that the ALJ improperly discredited Dr. Feria's opinion largely based on the CDI Report.  (*See* Report 11, 16–18).  This observation is at odds with the 14 paragraphs of medical history analysis — only one of which is about Dr. Feria's opinion — that the ALJ devoted to in concluding Plaintiff's "medical history is also inconsistent with her allegations of disability due to mental impairments."  (Admin. R. 35; *see id.* 36–37).  Much of that evidence appears inconsistent with Dr. Feria's opinion.  (*See id.* 35–37).  Additionally, the ALJ explicitly highlighted that an examination at CHI was inconsistent with Dr. Feria's opinion.  (*See id.* 39 (citing *id.* 656)).

Finally, the ALJ found that:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.  Specifically, the medical evidence of record indicates the claimant received routine and conservative treatment for her impairments.  The lack of aggressive treatment, such as psychiatric hospitalization or inpatient treatment, suggests that claimant's symptoms and limitations were not as severe as the claimant alleged.

(*Id.* 37).  Considering all this information, the ALJ had substantial evidence — not just the CDI Report — to discount Dr. Feria's opinion.

While the Magistrate Judge considered that the ALJ overly relied on the CDI Report to discredit medical evidence as to both Plaintiff's physical and mental impairments, the ALJ's detailed review of the record and analysis — as outlined above — provides substantial evidence for the ALJ's RFC determination.  (*See* Report 17–20).  In addition to the CDI Report, the ALJ

pointed to Dr. Martha Perez's medical opinion, Dr. Rosanna Perez's medical opinion, and Plaintiff's treatment at Jackson South Community Hospital and West Kendall Baptist Hospital as evidence for why Plaintiff's "medical history is inconsistent with her allegations of disability due to physical impairments." (Admin. R. 32; *see id.* 33–35, 38–40). And the ALJ cited to multiple examinations at CHI, Dr. Martha Perez's opinion, and Dr. John J. Catano's mental examination as evidence for why Plaintiff's "medical history is also inconsistent with her allegations of disability due to mental impairments." (*Id.* 35; *see id.* 36–40). In short, the ALJ's cited evidence is "more than a mere scintilla[]" and would allow a "reasonable mind [to] accept as adequate to support a conclusion." *Washington*, 906 F. 3d at 1358 (alterations added; quoting *Richardson*, 402 U.S. at 401).

Accordingly, the Court finds the ALJ's RFC conclusion is "supported by substantial evidence," which suffices. *Richardson*, 402 U.S. at 401 (citation and quotation marks omitted).

### C.  Other Work in the National Economy

Plaintiff's third and final argument is that Defendant failed to meet his burden of establishing that there is other work in the national economy for Plaintiff. (*See* Pl.'s Mot. 24–25); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988) (citation omitted). This relates to the ALJ's fifth step, where she determined that Plaintiff could perform other work in the national economy. (*See* Admin R. 41). Plaintiff takes issue with the ALJ's determination because it "relied on the testimony of a vocational witness in response to a hypothetical question that tracked her RFC finding in concluding that [Plaintiff] can perform sedentary unskilled work in representative occupations such as a table worker, addresser, and sorter." (Pl.'s Mot. 24 (alteration added; citation omitted)). Specifically, Plaintiff argues that the vocational witness's testimony was invalid because it involved the ALJ's hypothetical question based on the ALJ's

improper RFC determination.  (*See id.* 24–25).

Because the Court finds that the ALJ had substantial evidence for her RFC determination, Plaintiff's argument logically fails.  Indeed, because the ALJ properly used a vocational witness's testimony, Defendant met his burden of establishing that there is other work in the national economy for Plaintiff.  *See* 20 C.F.R. § 416.966(e); *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (an ALJ may use a vocational expert's testimony to show that jobs exist in the national economy for a plaintiff and such testimony is substantial evidence when it derives from an ALJ's hypothetical question that is comprehensively based on plaintiff's impairments (citations omitted)).

## IV.  CONCLUSION

In sum, the undersigned disagrees with the analysis and recommendations in the Report. First, the ALJ properly admitted the CDI Report because multiple factors supported its reliability.  Second, the ALJ did a thorough review of the record, cited multiple medical sources, and thereby had substantial evidence — without only or overly relying on the CDI report — to support her RFC determination.  Consequently, Plaintiff's third argument — that an improper RFC determination caused Defendant to not meet his burden of establishing that there is other work in the national economy for Plaintiff — must fail.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Report and Recommendation **[ECF No. 39]** is **REJECTED** as follows:

1.  Plaintiff's Motion for Summary Judgment **[ECF No. 26]** is **DENIED**.

2.  Defendant's Motion for Summary Judgment **[ECF No. 31]** is **GRANTED**.

3.  Final judgment shall issue separately.

CASE NO. 21-23917-CIV-ALTONAGA/Torres

**DONE AND ORDERED** in Miami, Florida, this 22nd day of March, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    Magistrate Judge Edwin G. Torres
       counsel of record